ALEXANDER LINCZER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Linczer v. Commissioner
Docket No. 4932-77.
United States Tax Court
T.C. Memo 1980-139; 1980 Tax Ct. Memo LEXIS 443; 40 T.C.M. (CCH) 253; T.C.M. (RIA) 80139; April 24, 1980, Filed *443 RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined deficiencies in petitioner's income tax for 1972 and 1973 in the amounts of $12,301.80 and $16,169.31, respectively. The deficiencies were based on a number of adjustments. As a result of petitioner's concessions or his failure to present any evidence with respect to all but two of them, only the following issues remain for decision: (1) whether petitioner is entitled to take into account in computing his adjusted gross income net losses from rental properties incurred by his wholly-owned real estate corporations in 1972 and 1973, and (2) whether petitioner may deduct $11,000 in 1973 as an alleged lease abandonment loss in connection with an enterprise known as "Hollywood Jewelers". FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and related exhibits are hereby incorporated in these findings by reference. Petitioner, who was a resident of New York at the time his petition was filed, was engaged in the business of real estate investment and finance during the taxable years in issue. Petitioner formed, organized and held stock in four real *444 estate corporations which owned buildings in New York City. These corporations, the 1411 Realty Corporation, the Ann Bernet Realty Corporation, the Cheshire Realty Corporation, and the 425 East 75th Street Realty Corporation, [1] were controlled from their inception by petitioner. Although no contract of agency was signed with any of the corporations, petitioner managed the business and affairs of the corporations. The corporations were used by petitioner to purchase real estate, execute mortgages, and to borrow money from financial institutions at interest rates in excess of those allowed by law on loans to individuals. Petitioner's method of operation was to arrange for the purchase of buildings in a state of disrepair, and then to procure construction loans to repair and rehabilitate the properties. After the rehabilitation of the buildings, permanent financing would be obtained from banks. Although *445 loans and mortgages were obtained in the names of the corporations, petitioner personally guaranteed the loans. Rental income from the buildings was commingled in a single bank account in petitioner's name. Petitioner paid all the expenses of the corporation out of this bank account. The corporations filed Federal corporate income tax returns and New York State corporate income tax returns for 1972 and 1973 indicating no income and no expenses. In computing his adjusted gross income in his 1972 and 1973 personal income tax returns, petitioner took into account the net rental losses allegedly incurred by his corporations in the amounts of $20,332.78 and $20,913.10, respectively. [2] The Commissioner determined that petitioner was not entitled to take such losses into account on his individual returns, "since the rental properties were not owned by you, but by separate Corporate entities." In July 1972 petitioner *446 organized and became the sole stockholder of Hollywood Jewelers, Inc., a corporation engaged in the retail sales of jewelry at 1858 Hollywood Boulevard, Hollywood, Florida. The imprint on its checks at the First National Bank of Hollywood indicates that it was known simply as "Hollywood Jewelers". The corporation began operations in July or August of 1972, and filed income tax returns for the fiscal years ending June 30, 1973, and June 30, 1974. At some time in the latter part of 1973, a small second jewelry store was opened at a mall in Hollywood. It too operated as "Hollywood Jewelers". Checks dated in October and November of 1973 indicate that the following expenditures (in the aggregate amount of $3,192.72) were made in connection with that store: $1,554.80 for fixtures (October 16, 1973), $250 to a safe and lock company (October 17, 1973), $270 to the same safe and lock company (October 18, 1973), $105.98 for lumber (October 23, 1973), $170 for carpentry work (November 1, 1973), $792.48 for security alarm (November 24, 1973), and $49.49 to a "Lighting & Lamp" company (date illegible). All of these checks were signed by petitioner. Some of them were drawn on the corporation's *447 account at the First National Bank of Hollywood. Others were drawn on an account designated as "Hollywood Jewelers - Master Charge" at the Southeast Bank of Hollywood Hills. The latter account was thus designated because Master Charge slips in connection with charge purchases were deposited in that account. The second store was unsuccessful. It was closed after some three or four months of operation. The first store continued to function at least until some undisclosed date thereafter. In a supplemental schedule (Form 4797) attached to his 1973 return petitioner deducted $11,000 as an ordinary loss, and identified the property involved as "Abandoned Leasehold-Store, Hollywood, Fla." The Commissioner disallowed the deduction for lack of substantiation. OPINION 1. Losses on rental properties. Petitioner deducted on his individual returns the losses sustained by four of his wholly-owned real estate corporations.He contends in substance that the corporations were merely dummies and should be disregarded. We disagree. It is true that if a corporation engages in no activity other than merely holding legal title to real estate, the corporate entity may be ignored. *448 See . However, as was stated in , "[a] corporation may not be disregarded in respect of taxation if * * * a bona fide intention in creating it was that the corporation itself should have some real substantial business function * * * or if it actually engages in business". See . Thus, it has been held that any activity beyond the mere holding of legal title to the property may require taxation of the corporation as a separate entity.See, e.g., (8th Cir.), cert. denied ; , cert. denied ; ; , cert. denied ; *449 , affd. per curiam . The parties have stipulated to the following facts: "The corporations were organized for business purposes. They purchased the properties, borrowed money from financial institutions to avoid interest limits on loans to individuals, and executed mortgages." In , affd. without published opinion, , we emphasized that in order to ignore the existence of a closely-held corporate entity at the behest of its shareholders, the corporation must be a "purely passive dummy" or "straw"; it will not be disregarded merely because it is dominated by its shareholders, as this fact is characteristic of most closely held corporations. In Strong we declined to ignore a corporate entity formed to avoid state usury laws which engaged in the activities of borrowing money, mortgaging property, and the receipt and application of loan proceeds. . In *450 to 80-886 (2d Cir. Feb. 22, 1980), affg. a Memorandum Opinion of this Court, the court reaffirmed its approval of our decision in Strong and refused to disregard two corporate entities the sole function of which was to hold title to and obtain mortgages on land, and to transfer the loan proceeds to partnerships which constructed and operated apartment buildings on the land. We conclude that petitioner's case is not fairly distinguishable from Strong or Ogiony. [3] Although the stipulated facts do not indicate whether the "interest limits" which prevented petitioner from obtaining loans without the use of a corporation had their source in the state usury laws, we think that any difference in the source of such restrictions would not be material. Furthermore, to the extent that other circumstances in this case may be different from those considered in Strong and Ogiony, petitioner, who bears the burden of proof, has not presented satisfactory evidence of such differing circumstances. Little of the evidence presented at trial related to petitioner's claimed net losses from rental properties, and the stipulation similarly does not describe the activities of the *451 corporations in detail. We can find no basis for reaching a result different from that in the foregoing cases. Petitioner has made the further argument that he is entitled to prevail on the ground of "res adjudicata" by reason of decisions of this Court in the following cases: Docket Nos. 5794-73, 5796-73, 5797-73, 5798-73, 5799-73, 5800-73, 5801-73, 5802-73, 5803-73, 5804-73, 5805-73, 5807-73, and 5808-73. We have examined these decisions, which are available for inspection in the public files of this Court, and find that petitioner's contention is wholly without merit. These cases, involving various tax years ending between 1963 and 1969, related not only to income taxes of corporations entirely different from those involved herein but also to petitioner's personal income taxes as well as his transferee liability in respect of such corporations. The cases were settled by stipulations of the parties, and the basis for such settlements has not been shown. Moreover, settlements are generally arrived at by give and take on the part of the litigants, and any decisions entered *452 on the basis of such settlements can hardly support a defense of collateral estoppel (which more appropriately describes the point made by petitioner rather than "res adjudicata" or "res judicata"). 2. Hollywood Jewelers. In view of the state of the record we must sustain the Commissioner's disallowance of the $11,000 deduction claimed by petitioner on his 1973 return as "Abandoned Leasehold-Store, Hollywood, Fla." This item relates to the cost of fixtures and other similar capital expenditures [4] with respect to a small retail jewelry store which was opened in the latter part of 1973 and which went out of business some three or four months thereafter. The burden of proof was upon petitioner, but the evidence was so confusing that we must conclude that petitioner has not carried his burden.
*453 In the first place, the record is hazy as to just when that store ceased doing business.Copies of checks tendered by petitioner to support the expenditures were dated in October and November of 1973, [5] the last check being dated November 24, 1973. In the circumstances, we were left in considerable doubt as to whether that enterprise expired in 1973 rather than in 1974, since it allegedly functioned for some three or four months -- notwithstanding petitioner's uncertain testimony that he thought the store was closed by Christmas of 1973. Assuming that petitioner has shown that he incurred a loss which was properly deductible, he has not shown that such loss occurred in 1973, and this reason alone is sufficient to sustain the Commissioner's determination on this issue. In the second place, it is far from clear on the record that the second store was owned by petitioner as a sole proprietor, rather than by his wholly-owned corporation, *454 Hollywood Jewelers, Inc., which operated the first store. To be sure, petitioner emphasized in his testimony that the second store was identified as "Hollywood Jewelers", and not "Hollywood Jewelers, Inc." But, as we have set forth in our findings, the corporation was also known, at least for some purposes, simply as "Hollywood Jewelers", as shown on the imprint of its checks at the First National Bank of Hollywood. Some $690 of the checks allegedly issued in connection with this item [6] were drawn on the account of the corporation at that bank. The remaining checks which were issued in connection with the opening of the second store were drawn on an account identified as "Hollywood Jewelers - Master Charge", at the Southeast Bank of Hollywood Hills. Notwithstanding petitioner's testimony that he utilized this account largely as his personal account, we were left with troubling doubts as to its real character. In view of the state of the record, we are unpersuaded that this account was not also a corporate account. Thus, we cannot find that any of the funds which were allegedly lost on the demise of the second store represented investments in that store that were made by *455 petitioner personally, rather than by his corporation. Furthermore, to the extent that petitioner personally made deposits in this account, or to the account at the First National Bank of Hollywood, they may have represented simply loans or capital contributions to a corporate enterprise, Hollywood Jewelers, Inc. And depending upon the proper classification of such possible personal outlays by petitioner, his inability to obtain restitution from his corporation could form the basis for deductions by him only upon establishing the time and worthlessness of the corporate debt or his capital investment in the corporation.
In sum, we cannot find that the expenditures in issue were made by petitioner personally rather than by his corporation, or that the second jewelry store in question was owned by him rather than by his corporation. Accordingly, if that store was owned by the corporation, any loss sustained by the enterprise as a result of closing the store was a loss that could properly be claimed by the corporation, not by petitioner individually.The point is the same as that considered in the first part of this opinion with respect to petitioner's *456 real estate corporations, and the same result is called for here. Decision will be entered for the respondent. Footnotes
1. Petitioner's "Answer To Brief" states that the names of these corporations as set forth above are incorrect or a "mistake", and suggests that at least one of them never existed. However, our findings are strictly in accord with the stipulation of facts filed by the parties.↩
2. The parties have stipulated figures as to income and expenses of each of petitioner's corporations which result in different figures as to the aggregate net losses for each year. However, in view of the conclusions reached herein, such differences become immaterial.↩
3. See also (April 15, 1980).↩
4. As noted in our findings of fact, petitioner has satisfactorily established only that a total of $3,192.75 was expended in connection with the opening of the second store, not the $11,000 claimed on his return. Although petitioner also introduced copies of other checks totaling $9,557.68, most of these checks were made payable to Hollywood Jewelers, Inc., or to various banks, and we did not find the evidence sufficiently convincing to connect these checks with the opening of the second store.↩
5. One check was dated October 9, 1972,↩ but this check obviously did not relate to this store; it undoubtedly involved an expenditure for the first store operated by Hollywood Jewelers, Inc., at 1858 Hollywood Boulevard in Hollywood, Florida.
6. See note 4, supra↩.